UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| TRAVIS D. TUCKER, | : | Civil Action No.: 3:16-CV-02093 (JCH) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| UNIVERSITY OF HARTFORD, | : | |
| Defendant | : | January 8, 2018 |
| | : | |

## DEFENDANT'S LOCAL RULE 56(a)(1) STATEMENT OF
## UNDISPUTED MATERIAL FACTS

1.  After beginning at the University of Hartford as an adjunct professor in the fall of 2007, Plaintiff became a tenure-track Assistant Professor of Philosophy in January of 2009. (Exhibit A, Pl.'s Dep. 50:21-23; 52:17-24; Exhibit B, Notice of Faculty Appointment, Tenure Track.)

2.  For academic years 2012-2013 and 2013-2014, Plaintiff also taught full-time at the University of New Haven. (Exhibit A, Pl.'s Dep. 23:4-24:11, Exhibit C, Personnel records from University of New Haven.)

3.  Plaintiff did not obtain written approval from the University of Hartford to hold this simultaneous teaching position, which is required by University of Hartford policy. (Exhibit A, Pl.'s Dep. 25:11-26:3; Exhibit D, Faculty Policy Manual, p. 12, § 3.6.)

4.  Plaintiff also had taught part-time at the University of New Haven in 2008 and from 2010 to 2012, while he was a full-time tenure-track employee at the University of Hartford, also without seeking or obtaining the required permission. (Exhibit A, Pl.'s Dep. 25:11-26:3, Exhibit C.)

5. As stated in the Notice of Faculty Appointment, Tenure Track, provided to Plaintiff on February 3, 2009:

   Tenure at the University can be granted only in accord with provisions of Section 6 of the *Faculty Policy Manual* and cannot be earned *de facto.* If tenure is granted, a tenured faculty contract is offered for the year after the tenure review year. If tenure is not granted, a final one-year, non-tenure track contract is offered for the year after the tenure review year.

   (Exhibit B.)

6. The *Faculty Policy Manual* expressly provides that teaching, professional development, and service are the three critical evaluation areas for being promoted to Associate Professor and awarded tenure. (Exhibit A, Pl.'s Dep. 139:13-15, 140:6-21; Exhibit D, § 6, pp. 24-25.)

7. Specifically, "[c]andidates for tenure must demonstrate excellence in teaching and scholarly activity," and "at least adequacy in service;" it further provides, "[c]andidates for promotion to Associate Professor must demonstrate sustained and substantial performance in teaching and scholarly activity" as well as "adequacy in service." (Exhibit D, § 6, pp. 24-25; Exhibit E, Brief of Council on Promotion, Tenure and Academic Freedom Re: Plaintiff's Promotion, p. 1.)

8. Plaintiff understood the requirements for tenure and promotion to Associate Professor. (Exhibit A, Pl.'s Dep. 139:6-14; 180:1-7.)

9. Tenure may be granted only by vote of the Provost's Committee on Promotion, Tenure and Academic Freedom, the approval of the President, and the Board of Regents. (Exhibit D, p. 24, § 6.1, pp. 28-37, § 8.)

10. "All faculty holding tenure-track contracts are considered to be in the probationary period, which is not to exceed six years in duration except under extraordinary circumstances when an extension is granted." (Exhibit D, p. 26, § 7.1)

2

11. Plaintiff admits he did not meet the established standard of "excellence in … scholarly activity." (Exhibit A, Pl.'s Dep. 272:22-24.)

12. He testified under oath at his deposition that, "if the University wants to make their case based on publications, then I have to agree and say no, it wasn't excellent." (Exhibit A, Pl.'s Dep. 272:22-24.)

13. Plaintiff asserts, instead, that the University of Hartford should have adjusted its tenure standards for him, "perhaps lower[ing] the standard for scholarly output" while placing more emphasis on his teaching, which was an area of strength for him. (Exhibit A, Pl.'s Dep. 270:2-272:10.)

14. In Plaintiff's Faculty Evaluation Form for the period of September 1, 2010 to August 31, 2011, then-Dean Joe Voelker stated he would "expect to see more [scholarly] projects in progress at this point." (Exhibit A, Pl.'s Dep. 184:21-185:10 Exhibit F, 2010-2011 Faculty Evaluation Form, p. 8.) (emphasis added).

15. Similarly, Marcia Moen, Chair of the Philosophy Department, stated in that same evaluation that Plaintiff needed to sustain the progress he was making in scholarship and professional development. (Exhibit A, Pl.'s Dep. 186:11-17; Exhibit F, p. 6.)

16. Plaintiff's stated goal for academic year 2011-2012 to submit two to three papers to referred journals/conferences. (Exhibit F, p. 9.)

17. In January of 2012, Dr. Moen submitted her mid-course review of Plaintiff to the Arts and Sciences Council on Promotion and Tenure. (Exhibit A, Pl.'s Dep. 180:19-23; Exhibit G, Mid-Course Review.)

18. "Mid-course review" is a preliminary assessment, generally in the professor's third year, of progress toward tenure. (Exhibit D, § 8.1, p. 28.)

19. Dr. Moen's review stated that Plaintiff's scholarship and professional development were only *adequate*, but that Plaintiff's teaching was exceptional and his service was more than adequate. (Exhibit G, p. 1.)

20. Plaintiff did not disagree with Dr. Moen's assessment. (Exhibit A, Pl.'s Dep. 181:5-7.)

21. For academic year 2011-2012, Plaintiff received similar feedback on his scholarly activities. (Exhibit H, 2011-2012 Faculty Evaluation Form, pp. 6-8.)

22. Dr. Moen specifically urged him to continue to seek available conference opportunities, at which papers could be developed or honed. Dr. Moen stated Plaintiff "must and will continue to push on the publication front," which Plaintiff understood to mean that there was a need for him to keep moving toward more publications. (Exhibit A, Pl.'s Dep. 192:17-19; Exhibit H, p. 6.)

23. Additionally, then-Dean Voelker expressly advised Plaintiff it was "the time to step up scholarly production in anticipation for the critical year" and noted Plaintiff was "not an eager conference participant." (Exhibit H, p. 7.)

24. Plaintiff again had the goal of completing and submitting two to three papers to referred journals/conferences in the 2012-2013 academic year. (Exhibit H, p. 8.)

25. On January 7, 2014, Plaintiff requested a one-year extension to his probationary period. (Exhibit A, Pl.'s Dep. 196:19-25; 262:17-263:1; Exhibit I, February 13, 2014 Letter from Black to Vazquez.)

26. His stated basis for the request was his daughter's illness, and Katherine Black, who had become the interim Dean, approved the request. (Id.)

27. His tenure review year was postponed to 2015-2016. (Id.)

28. In Plaintiff's reviews for academic years 2013-2014 and 2014-2015, the University noted its continued concern in the area of scholarship. (Exhibit J, 2013-2014, 2014-2015 Faculty Evaluation Forms, pp. 5, 10.)

29. To date, Plaintiff has published only two scholarly papers: one in 2010 and one in 2012. (Exhibit A, Pl.'s Dep. 13:19-15:10.)

30. Plaintiff has not participated in professional conferences in several years. (Exhibit A, Pl.'s Dep. 16:8-17:21; Exhibit J, pp. 2, 4, 7, 9.)

31. Prior to his tenure consideration, the University of Hartford provided Plaintiff with the "Standards and Procedures Council on Promotion, Tenure, and Academic Freedom of the College of Arts and Sciences, 2015-2016," which outlined the steps a tenure and promotion candidate must take. (Exhibit A, Pl.'s Dep. 179:15-24; Exhibit K, Standards and Procedures, Council on Promotion, Tenure & Academic Freedom of the College of Arts and Sciences, 2015-2016, p. 2.)

32. That document reiterated that "[c]andidates for tenure must demonstrate excellence in teaching and scholarly activity," and "least adequacy in service" and that "[c]andidates for promotion to Associate Professor must demonstrate sustained and substantial performance in teaching and scholarly activity" as well as "adequacy in service." (Exhibit K, p. 2.)

33. Plaintiff understood these requirements prior to submitting his application for tenure and promotion to Associate Professor on September 21, 2015. (Exhibit A, Pl.'s Dep. 180:1-7; Exhibit L, Plaintiff's Tenure Dossier.)

34. After his initial submission, Plaintiff supplemented his application in October, 2015 at the request of the Council for additional materials regarding his teaching and scholarship. (Exhibit L, pp. 22-24.)

35. Upon review of Plaintiff's completed application and having interviewed Plaintiff and Dr. Moen, on November 17, 2015, the Council unanimously recommended denial of Plaintiff's application for promotion; on Plaintiff's tenure application, the Council was split three to two in favor of denial. (Exhibit E, p. 1.)

36. While the Council concluded that Plaintiff met standards for teaching and service, its "evaluation of [Plaintiff's] scholarly activity raised concerns about his publishing record." (Exhibit E, p. 1.)

37. Specifically, the Council found, *inter alia*, that:

   a) Plaintiff had been teaching at the University of Hartford since 2007, but no publications arising from his dissertation or any other work appeared until 2010. (Exhibit E, p. 6.)

   b) A total of two peer-reviewed manuscripts represented Plaintiff's scholarly output at the time of the Council's review. (Exhibit E, p. 6.)

   c) The acceptance rates and circulation for one of the journals in which one of Plaintiff's articles appeared was not provided nor was any information on the number of citations of Plaintiff's work by others. (Exhibit E, p. 6.)

   d) Since 2009, Plaintiff only attended two conferences, but no peer-reviewed presentations were part of his participation in those conferences. (Exhibit E, p. 6.)

   e) Plaintiff did not receive any internal or external funding to support his research, and admitted that he had never applied for internal grants to support his work. (Exhibit E, p. 6.)

   f) One of Plaintiff's external reviewers, Dr. Edward Mooney, Professor Emeritus in the Department of Religion and Philosophy at Syracuse University and Visiting Professor, Hebrew University of Jerusalem, Tel-Aviv University, wrote that "[r]elative to others at roughly [Plaintiff's] stage in an academic career . . . [Plaintiff's] record of published work is conspicuously small." (Exhibit E, p. 8; Exhibit L, p. 61.)

   g) Dr. Mooney, as well as Plaintiff's two other external reviewers judged Plaintiff's scholarly output to be "compatible with somebody at the very early stage of an academic career." (Exhibit E, p. 8; Exhibit L, p. 61, 65-67.)

38. Dean Black also recommended against tenure and promotion. In her assessment, signed on December 3, 2015, Dean Black noted that Plaintiff's level of peer-reviewed publications and presentations seemed "well below what is expected for junior faculty at the University of Hartford," and that his external reviewers' letters were "tempered in their assessment." (Exhibit M, Recommendation of Dean Black, pp. 2-3.)

39. Accordingly, Dean Black concluded that Plaintiff had not met the criteria of excellence in scholarship or sustained and substantial scholarship, and agreed with the Council's decision not to recommend Plaintiff for tenure or promotion to associate professor. (Exhibit M, p. 5.)

40. By letter dated January 7, 2016, Provost Sharon L. Vazquez notified Plaintiff that the Provost's Committee on Promotion, Tenure, and Academic Freedom had voted against his application: she advised that, with regard to tenure, the committee had eight no votes, two yes votes, and one recusal; and with regard to promotion, the committee unanimously rejected his application, with one recusal. (Exhibit N, January 7, 2016 Letter from Vazquez to Tucker.)

41. Provost Vazquez also advised Plaintiff that she would review his application and then provide her recommendation to University President Walter Harrison. (Exhibit N.)

42. By letter dated January 14, 2016, Provost Vazquez notified Plaintiff that she could not "recommend to the President that [he] be granted tenure in the College of Arts and Sciences, or promoted to the rank of associate professor, since [his] applications do not meet expectations for scholarship." (Exhibit O, January 14, 2016 Letter from Vazquez to Tucker.)

43. Provost Vasquez's January 14, 2016 letter specifically advised Plaintiff of the procedure to appeal her recommendation. (Exhibit O.)

44. Plaintiff did not appeal. (Exhibit A, Pl.'s Dep. 141:5-13.)

45. As Plaintiff was not awarded tenure or promotion to Associate Professor, he completed one final non-tenure track contract for the 2016-2017 academic year. (Exhibit P, Notice of Faculty Appointment, Non-Tenure Track.)

46. In the spring of 2010, Plaintiff alerted the University to the fact that he was receiving unwanted contacts from a female student in his Introduction to Philosophy class. (Exhibit A, Pl.'s Dep. 21:14-23, 40:19-41:1, 41:11-15.)

47. On May 27, 2010, Vice President of Student Affairs Lee Peters met with the student and had her sign an agreement not to contact Plaintiff. (Exhibit A, Pl.'s Dep. 170:10-17; Exhibit Q, May 27, 2010 Email from Peters to Tucker)

48. The student, who had just started at the University of Hartford in the spring of 2010, also withdrew from the University of Hartford at that time. (Exhibit A, Pl.'s Dep. 40:19-41:1, 41:11-15, 168:3-13, 170:10-17.)

49. On June 1, 2010, Public Safety responded to Plaintiff's call about the student and met with Plaintiff to discuss the matter. (Exhibit A, Pl.'s Dep. 172:6-13; Exhibit R, June 1, 2010 Case Incident Report.)

50. Plaintiff chose not to call Public Safety when he saw the student on campus on June 3, 2010. (Exhibit A, Pl.'s Dep. 172:17-174:12.)

51. In the summer of 2010, the student was the subject of another complaint, unrelated to Plaintiff. (Exhibit S, August 19, 2010 Case Incident Report.)

52. The complaining party – a male Admissions Office employee – called Public Safety about the student's presence in the Admissions Office. (See Exhibit S.)

53. Public Safety apprehended her and imposed "Persona Non Grata" status on her. (See Exhibit S, p. 3.)

54. As Vice President Peters advised Plaintiff by email in October 2010, after the student had made yet further contacts with Plaintiff:

> [she] has been PNG'd (Person[a] Non Grata) from the University, meaning that if she is caught on campus, she will be detained by PS and the local Police will be called to arrest her. The best thing you can do if she shows up again is to call Public Safety. They know of her and what to do with her. . . She is currently not a student but remains on active status.

(Exhibit T, October 13, 2010 Emails from Peters and Schmaltz, p. 1.)

55. Also on October 13, 2010, John Schmaltz, Director of Public Safety, directed the University's Public Safety officers to request police intervention to have the student arrested if she were found on University property. (Exhibit T, p. 2.)

56. In March 2011, Plaintiff called Public Safety about additional contact from the student, and Public Safety responded, but did not locate the student and was not able to contact her by telephone. (Exhibit A, Pl.'s Dep. 48:11-14, 244:9-14, 246:14-247:2, 247:3-7 247:16-22; Exhibit U, March, 2011 Case Incident Report.)

57. Plaintiff has not had face to face interaction with the student since March 2011. (Exhibit A, Pl.'s Dep. 79:5-19, 247:23-25; 304:7-16.)

58. On October 28, 2013, Susan Gottlieb, a University of Hartford staff member, alerted Public Safety to the possibility that the student would attend a campus event, which the student did in fact attend. (Exhibit V, October 28, 2013 Case Incident Report.)

59. Public Safety approached the student after the event and issued her an extended PNG, through March 2015. (Exhibit V, p. 2-3.)

60. At a December 4, 2014 meeting of the faculty of the College of Arts and Sciences at which a Public Safety officer was making a presentation, Plaintiff stated:

9

I have been stalked for four and a half years. I haven't seen my stalker in about a year. So far this year, I have only received some love letters. If she shows up again, what should I do?

(Exhibit A, Pl.'s Dep. 248:9-20, Exhibit W, Minutes of the December 4, 2014 Faculty Meeting, p. 9.)

61. The Public Safety officer at the meeting told Plaintiff that they could speak after the meeting, and also said that the University was using technology, such as license plate readers, to "remove people who do not belong campus." (Exhibit W, p. 9.)

62. Plaintiff was advised to call Public Safety if he saw the student. (Exhibit A, Pl.'s Dep. 249:8-13; Exhibit W, p. 9.)

63. Plaintiff did not seek to talk to the Public Safety officer after the faculty meeting, nor at any point after that. (Exhibit A, Pl.'s Dep. 247:23-25.)

64. Because Plaintiff referred in his tenure and promotion application to the "stalker" issue as an "extenuating circumstance," Dean Black contacted him on October 8, 2015 to discuss the issue. (Exhibit A, Pl.'s Dep. 253:17-25, Exhibit L, p. 1.)

65. Plaintiff refused to meet with Dean Black. (Exhibit A, Pl.'s Dep. 254:6-255:5, 279:18-280:17)

66. The student never threatened Plaintiff with violence. (Exhibit A, Pl.'s Dep. 98:21-25.)

67. Plaintiff bases his retaliation claim on the following alleged "complaints:"

- his tenure application, which does not include any claim of discrimination (Exhibit A, Pl.'s Dep. 333:23-334:11.);

- one on one meetings with Dean Black in 2014 and 2015 during which Plaintiff discussed the situation with Student A but does not specifically recall mentioning discrimination (Exhibit A, Pl.'s Dep. 334:17-338:25, 344:8-11, 344:19-346:3, 346:12-20.);

- his "broad comment" at the faculty meeting on December 4, 2014 that he had a "stalker" (Exhibit A, Pl.'s Dep. 339:44-342:17);

10

- and his statements to Dr. Moen, Nancy Dudek (at times unknown) and Warren Goldstein (in 2014) that he felt a female colleague received better treatment than him with respect to her complaints about Student A, which Plaintiff has no evidence were ever shared with anyone else at the University. (Exhibit A, Pl.'s Dep. 93:7-94:8, 347:15-350:9.)

68. Dr. Moen recommended in favor of tenure and promotion for Plaintiff. (See Exhibit X, Chair's Evaluation).

DEFENDANT,
UNIVERSITY OF HARTFORD

By:  */s/Victoria Woodin Chavey*
Victoria Woodin Chavey (ct14242)
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT  06103
Tel: (860) 522-0404
Fax: (860) 247-1330
chaveyv@jacksonlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2018 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/Victoria Woodin Chavey*
Victoria Woodin Chavey